OPINION OF THE COURT
Stephen Smyk, J.
Late in the afternoon of October 23, 1981, plaintiffs, husband and wife, entered the McDonald’s restaurant owned and operated by defendant at 1600 Bruckner Boulevard in The Bronx and purchased two large cups of coffee and a hamburger. An employee in the restaurant filled two cardboard cups with coffee from a carafe which plaintiffs had seen the employee fill from a larger metal urn. The cups were covered with plastic lids and placed in a paper bag. Mrs. Huppe carried the bag from the restaurant to the plaintiffs’ car in the restaurant’s parking area. In the car, Mrs. Huppe re *737 moved the lid from at least one of the cups of coffee in order to add cream and sugar. While she was holding both cups in her hands, her husband began backing the car out of its parking space and the car jerked. Mrs. Huppe also jerked and the coffee from both cups spilled onto the upper part of her body. In an effort to assist his wife, Mr. Huppe returned to the restaurant, told an employee that his wife had been burned, and asked for some water. He received a small cup of water, said that it as not enough, and immediately left the restaurant. Shortly thereafter, with the help of a passerby, Mr. Huppe drove his wife to a local hospital where she was treated for first and second degree burns to her chest, neck, face and shoulders.
In November of 1982, plaintiffs commenced this action to recover for the injuries sustained by Mrs. Huppe alleging negligence and breach of warranty on the part of defendant in serving coffee at an unreasonably high temperature. Defendant served an answer denying most of the allegations in the complaint in January of 1983 and conducted an examination before trial of plaintiffs in December of 1983. Apparently plaintiffs have taken no further steps to prosecute their claims, and defendant now moves for summary judgment against plaintiffs on the ground that the facts are insufficient to support the causes of action alleged in the complaint. In opposition to this motion, plaintiffs contend that there are triable issues of fact regarding whether the coffee was defective by virtue of its temperature, whether the cups were defective, whether defendant had a duty to warn Mrs. Huppe of the temperature of the coffee, and whether defendant fulfilled its alleged duty to assist Mrs. Huppe after the coffee spilled.
In examining the papers submitted by the parties, the court finds that the only evidentiary facts which could support plaintiffs’ causes of action are contained in the depositions of plaintiffs and the affidavit of Desi Morgan, the manager of the restaurant. The affidavit of plaintiffs’ attorney is of no evidentiary value because he has no personal knowledge of the underlying facts and circumstances. The affidavit of Peter Dikeos, submitted by plaintiffs after argument of this motion, is clearly neither the statement of one with personal knowledge of any relevant facts nor the opinion of a qualified expert as to the "proper” or customary serving temperature of coffee, or as to quality of the cup in which the coffee was served. Mr. Dikeos merely reports how he serves coffee to his customers in *738 the Village of Johnson City. Therefore, his affidavit presents no relevant evidentiary facts.
Also, the affirmation of plaintiffs’ attorney in a letter to the court dated December 4, 1984 is so lacking in probative value that the court has wholly disregarded its content in deciding this motion.
Since plaintiffs phrase their claims in terms of negligence, products liability, and breach of warranty, it is clear that on this motion for summary judgment plaintiffs must come forth with evidence that the coffee, or its containers, were defective or negligently served to plaintiffs by defendants, and that the defect or the negligence was a proximate cause of Mrs. Huppe’s injuries. After reviewing the evidence presented, the court concludes that there are no triable issues of fact as to these claims.
The only evidence of the temperature of the coffee served to plaintiffs is defendant’s admission that its general practice was to brew coffee at a temperature between 195 degrees Fahrenheit and 205 degrees Fahrenheit and to hold it before serving at a temperature between 180 degrees Fahrenheit and 190 degrees Fahrenheit. However, the fact that the coffee was hot enough to cause injury if not properly handled does not mean that it was defective or negligently served. Where, as here, a product by its very nature has a dangerous attribute, liability is imposed only when the product has an attribute not reasonably contemplated by the purchaser or is unreasonably dangerous for its intended use. (See, Robinson v Reed-Prentice Div. of Package Mach. Co., 49 NY2d 471, 479.)
Since plaintiffs clearly intended to purchase hot coffee and since coffee is customarily served and intended to be consumed as a hot beverage, plaintiffs must present evidentiary facts establishing that the coffee served by defendant was defective or unreasonably dangerous by virtue of being hotter than it should have been. Plaintiffs have wholly failed to meet this burden. They merely make the conclusory allegation that the coffee was "super heated” and "too hot”, and they submit only the statement of Mr. Dikeos that he serves coffee at a lower temperature which he considers to be safe. Since plaintiffs have failed to show that the coffee was so hot that it exceeded the reasonable or customary standards for such a product, there is no evidence from which a trier of fact could conclude that the coffee was defective, unreasonably dangerous, or negligently served.
*739 Similarly, plaintiffs have failed to support their claim that the coffee was defective or negligently served by virtue of defendant’s failure to warn plaintiffs that the coffee was hot. The evidence indicates that the hotness of the coffee was contemplated and actually perceived by Mrs. Huppe before she was injured. While the obviousness of a dangerous condition is now generally considered only in connection with assessing comparative fault (see, Micallef v Miehle Co., 39 NY2d 376), here the hotness of the coffee was such an essential and intended attribute of the product that defendant had a duty to warn of its temperature only if it exceeded the reasonable range of temperature for such a product. (See, Landrine v Mego Corp., 95 AD2d 759.) Again, there is no evidence that the coffee was hotter than contemplated by plaintiffs so that they should have been warned.
With regard to the cups in which the coffee was served, there is no indication in the evidence that the cups failed to contain their contents under foreseeable conditions where they would reasonably be expected to do so. A manufacturer or seller need not incorporate safety features into its product so that no harm will come to a user no matter how careless she may be and no matter what the circumstances of its use. (Robinson v Reed-Prentice Div. of Package Mach. Co., supra, at p 481.) Here, the cups were covered when served to plaintiffs and there is no evidence that they burst, collapsed, or otherwise discharged their contents without the intervention of an unforeseen external force. The evidence indicates that one or both lids had been removed and that it was the jerking motion of Mrs. Huppe which spilled their contents. The possibility that spill-proof cups could have been provided does not prove that the cups actually provided were below the customary or reasonable standard at the time and locality involved, or that they were unfit or unsafe for their intended use.
Therefore, the court concludes that there is insufficient evidence of a defective product, a failure to warn, or negligence to raise a triable issue of fact as to the liability of defendant for plaintiffs’ injuries.
However, even if there were some evidence of such a defect or negligence, plaintiffs still have failed to meet their burden of showing that the defect or the negligence was an actual and proximate cause of the injuries sustained. Plaintiffs do not argue that the hotness of the coffee, some defect in the cups, or the failure to warn actually caused the coffee to spill and *740 come into contact with plaintiffs body. All the evidence indicates that it was the sudden motion or jerking of the car, and of Mrs. Huppe, which caused the coffee to spill out of the cups.
Although it is now well settled that a defect in a product need only enhance or contribute to a plaintiffs injuries in order to impose liability for those injuries upon the manufacturer or seller (see, Bolm v Triumph Corp., 33 NY2d 151), plaintiffs here have failed to establish that the temperature of the coffee caused Mrs. Huppe to sustain more burns or burns of a greater degree than she would have.sustained if the coffee had been served at the customary or reasonably safe temperature for such a hot beverage. Therefore, the court must conclude that the temperature of the coffee was a condition for the occurrence and not a cause of the injuries sufficient to impose liability. (See, Sheehan v City of New York, 40 NY2d 496, 503.)
Similarly, with regard to any failure to warn, there is no evidence that a warning would have permitted Mrs. Huppe to avoid or minimize her injuries. She admitted that she was aware that the coffee was hot and that hot beverages could burn prior to her injuries. Thus, there is no triable issue of fact as to whether or not defendant’s failure to warn, if there was such a duty, caused the spill or contributed to the severity of Mrs. Huppe’s injuries. (See, Torrogrossa v Townmotor Co., 44 NY2d 709, 711.) Finally, with regard to the claim that defendant failed to fulfill its duty to assist plaintiffs after the coffee spilled, the court knows of no statutory or common-law duty that required defendant to render first aid or other assistance in treating Mrs. Huppe’s burns. However, even if there were such a duty, there is no evidence that defendant’s failure to fulfill it caused or contributed to plaintiffs injuries.
Accordingly, the court finds as a matter of law that the facts presented are insufficient to support any of the causes of action alleged by plaintiffs and that defendant is entitled to summary judgment dismissing the complaint.